# IN THE SUPREME COURT OF TEXAS

No. 11-0891

IN RE CARRIE DEAN, RELATOR

ON PETITION FOR WRIT OF MANDAMUS

CHIEF JUSTICE JEFFERSON delivered the opinion of the Court.

JUSTICE LEHRMANN delivered a concurring opinion.

JUSTICE GREEN did not participate in the decision.

Motivated in part to prioritize "home state jurisdiction" in child custody proceedings, Texas adopted the Uniform Child Custody Jurisdiction and Enforcement Act. *See Powell v. Stover*, 165 S.W.3d 322 (Tex. 2005). Forty-eight other states, the District of Columbia, Guam, and the United States Virgin Islands have done the same.[1]

The Act encourages national uniformity in child custody disputes and addresses the increasing mobility of American families. *See Powell*, 165 S.W.3d at 326. Previously, state courts modified custody determinations each time a child moved from one state to another, and those orders

---

[1] Massachusetts and Puerto Rico recently introduced the UCCJEA to their legislatures for proposed adoption. *Child Custody Jurisdiction and Enforcement Act*, UNIFORM LAW COMMISSION, http://www.uniformlaws.org/Act.aspx?title=Child%20Custody%20Jurisdiction%20and%20Enforcement%20Act (all Internet material as visited Dec. 19, 2012, and copy available in Clerk of Court's case file). *See also* 39 GUAM CODE § 39101 et seq.

often conflicted. To minimize these conflicts, the Act provides guidance on how to determine which state has jurisdiction over all subsequent child custody proceedings.[2] The Act makes the child's "home state" the primary factor in this equation. *See* Unif. Child Custody Jur. & Enf. Act Prefatory Note, 9 U.L.A. 650–51 (1997) (stating that the Act sought to "eliminate the inconsistent state interpretations" and "prioritize[] home state jurisdiction in [s]ection 201" when child custody determinations are involved). It "establish[es] clear bases" for a court to "tak[e] jurisdiction and . . . discourage[s] competing child custody orders" among different states.[3]

We consider today whether a Texas court has jurisdiction over a custody determination involving a child who was born in New Mexico and has lived there all his life. Because New Mexico, not Texas, is the child's home state, and because we find no other "exclusive, continuing jurisdiction[al]" bases under the Act, *see* Tex. Fam. Code § 152.202, the Texas court improperly assumed jurisdiction. We also think the New Mexico trial court erroneously ceded jurisdiction to Texas. Until the New Mexico appellate court addresses that matter, and because jurisdiction must reside somewhere in the interim, we lift our stay and order the Texas trial court to confer immediately with the New Mexico Court of Appeals, where the case is currently pending. *See* Tex.

---

[2] The Act distinguishes between child custody "determinations" and "proceedings." A child custody determination "means a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, temporary, initial, and modification order." Unif. Child Custody Jur. & Enf. Act § 102(3), 9 U.L.A. 658 (1997). A child custody proceeding "means a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue . . . [and] includes a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights, and protection from domestic violence, in which the issue may appear." *Id.* § 102(4). Therefore, Richard's original petition for *divorce* may also be characterized as a "child custody proceeding" under the UCCJEA.

[3] *Child Custody Jurisdiction and Enforcement Act Summary*, Uniform Law Commission, http://www.uniformlaws.org/ActSummary.aspx?title=Child Custody Jurisdiction and Enforcement Act.

2

FAM. CODE § 152.201(a) (explaining "home state jurisdiction"); *see also id.* § 152.110(b) ("A court of this state may communicate with a court in another state concerning a proceeding arising under this chapter."). Accordingly, we conditionally grant relief.

* * *

Richard Hompesch, III, and Carrie Dean were married in September 2010, and lived together in Irving. The couple separated nineteen days after their wedding. Two months later Carrie, who was pregnant with Richard's child, moved to New Mexico without notifying Richard.

In February 2011, Richard filed for divorce in Dallas County and sought orders concerning the upcoming birth of their child. Carrie was personally served with process in Albuquerque, New Mexico. She gave birth to a son, J.S.D., in New Mexico, and subsequently answered the Texas case. J.S.D. has resided in New Mexico with Carrie continuously since his birth. After learning of J.S.D.'s birth, Richard amended his petition to request shared custody and sought Carrie's compelled return to Dallas with J.S.D.

Carrie then petitioned a New Mexico court to adjudicate custody pursuant to the New Mexico Child Custody Jurisdiction and Enforcement Act.[4] Carrie alleged that the New Mexico court, and not Texas, had jurisdiction because New Mexico was J.S.D.'s "home state." *See* N.M. STAT. § 40-10A-201(a) (setting forth substantively identical bases for "home state jurisdiction" to those found in Texas Family Code section 152.201(a)). She simultaneously sought dismissal of the Texas proceeding.

---

[4] New Mexico adopted the UCCJEA in 2001, and its provisions relevant to this case are substantially the same as those of the Texas Act. *See Child Custody Jurisdiction and Enforcement Act: UCCJEA Adoptions*, UNIFORM LAW COMMISSION, http://uniformlaws.org/Shared/docs/UCCJEAadoptions.pdf; *see also* N.M. STAT. § 40-10A-101 et seq.

3

The Texas and New Mexico trial courts, along with both parties' counsel, conferred in late August 2011.[5] *See* N.M. STAT. § 40-10A-110(a) (providing that "[a] court of this state may communicate with a court in another state concerning a proceeding arising under the Uniform Child-Custody Jurisdiction and Enforcement Act"); TEX. FAM. CODE § 152.110(b) (same). The New Mexico trial judge concluded that New Mexico was J.S.D.'s home state because he was born there. J.S.D. had never lived anywhere else. Even though the New Mexico court did not find that New Mexico was an inconvenient forum, or that the parties had engaged in unjustifiable conduct—the two bases on which a home state may decline jurisdiction[6]—the New Mexico court deferred to the Texas court to "make the first call."

The Texas associate judge concluded that Texas had jurisdiction over the proceedings because Richard filed his divorce petition in Texas first. Based on that decision, and even though it thought that "New Mexico does have jurisdiction . . . [and is J.S.D.'s] home state," the New Mexico court dismissed Carrie's pending custody suit without prejudice. It noted that Carrie's custody suit could be "refiled if in fact—somewhere along the line it's discovered that Texas doesn't have jurisdiction."

When the New Mexico trial court dismissed the case, the Texas district court adopted the associate judge's recommendations, which appointed Richard and Carrie as J.S.D.'s Temporary Joint

---

[5] Pursuant to sections 201.005(a) and 201.007(a) of the Texas Family Code, the Texas district court associate judge conducted the conference with the New Mexico trial court. *See* TEX. FAM. CODE §§ 201.005(a), .007(a) (providing that a district judge "may refer to an associate judge any aspect of a suit over which the court has jurisdiction under this title" and enumerating an associate judge's powers).

[6] UNIF. CHILD CUSTODY JUR. & ENF. ACT §§ 201(a), 207, 208, 9 U.L.A. 671, 682–84 (1997) (emphases added); *see also* N.M. STAT. §§ 40-10A-201(a), -207, -208; TEX. FAM. CODE §§ 152.201(a), .207, .208.

4

Managing Conservators, granted Carrie the right to establish J.S.D.'s residence in either Dallas or Albuquerque during pending appeals, and set forth guidelines for both parents' access to J.S.D.

Carrie appealed the New Mexico trial court's dismissal order to the New Mexico Court of Appeals. Earlier this year, that court issued two proposed summary dispositions[7] proposing to hold that New Mexico is J.S.D.'s home state with exclusive jurisdiction over custody and visitation.[8] Carrie's New Mexico appeal has since moved to the court's general calendar, where it remains pending. *See* N.M.R.A. Rule 12-210(B), (D) (describing general and summary calendar processes).

After unsuccessfully seeking mandamus relief from the court of appeals in the Texas case, ___ S.W.3d ___, Carrie petitioned this Court for a writ of mandamus. She concurrently sought a stay of the Texas trial court's order, which we granted. We must decide whether the Texas court properly assumed jurisdiction over the custody determination. Richard makes a number of arguments based on his desire to be involved with Carrie's prenatal care and J.S.D.'s birth. Because Carrie has already given birth to J.S.D., we limit our discussion to proceedings involving his custody.

* * *

---

[7] When a case is placed on the summary calendar, the appellate court issues a proposed disposition and states the basis for its proposal. The parties then have twenty days from the date of service of the notice of proposed disposition to file memoranda as to why the disposition should or should not be made. After reviewing any filed memoranda, "the appellate court will either reassign the case to a nonsummary calendar, issue another notice of proposed summary disposition or proceed to decide the case by opinion or order." N.M.R.A. Rule 12-210(D).

[8] *See* New Mexico Court of Appeals' second proposed summary disposition holding, in relevant part, that:

New Mexico is [J.S.D.'s] "home state" and, as such, New Mexico has exclusive and paramount jurisdiction over the custody and visitation issues relating to [J.S.D.]. [T]he district court erred in ceding jurisdiction to Texas and dismissing the case. [The court] propose[s] to reject [Richard's] request for a stay pending the Texas Supreme Court decision, and … again propose[s] to reverse the district court and remand for the district court to proceed to exercise its jurisdiction and determine the custody and visitation issues relating to [J.S.D.].

5

The Act, as adopted by Texas and New Mexico, states that a court has jurisdiction to make an initial child custody determination only if:

> (1) this State is the home State of the child on the date of the commencement of the proceeding . . .
>
> (2) a court of another State does not have jurisdiction under paragraph (1), or a court of the home State of the child has declined to exercise jurisdiction *on the ground that this State is the more appropriate forum under Section 207[9] and 208,[10]* and:
>
> > (A) the child and the child's parents, or the child and at least one parent . . . have a significant connection with this State other than mere physical presence; and
> >
> > (B) substantial evidence is available in this State concerning the child's care, protection, training, and personal relationships;
>
> (3) all courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction *on the ground that a court of this State is the more appropriate forum to determine the custody of the child* under Section 207 or 208; or
>
> (4) no court of any other State would have jurisdiction under the criteria specified in paragraph (1), (2), or (3).

UNIF. CHILD CUSTODY JUR. & ENF. ACT § 201(a), 9 U.L.A. 671 (1997) (emphases added); *see also* N.M. STAT. § 40-10A-201(a); TEX. FAM. CODE § 152.201(a).

These four grounds provide "the exclusive jurisdictional basis for [a Texas court to] mak[e] a child custody determination." TEX. FAM. CODE § 152.201(b). So, unless a court finds that it has jurisdiction under one of the four enumerated grounds, it cannot exercise jurisdiction over a child

---

[9] UNIF. CHILD CUSTODY JUR. & ENF. ACT § 207, 9 U.L.A. 682 (1997) ("Inconvenient Forum") (allowing a court of this State with jurisdiction to make a child-custody determination under this Act to "decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another State is a more appropriate forum").

[10] UNIF. CHILD CUSTODY JUR. & ENF. ACT § 208, 9 U.L.A. 683–84 (1997) ("Jurisdiction Declined by Reason of Conduct") (allowing a court to decline jurisdiction upon a finding that "a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct" in certain situations).

6

custody determination. Furthermore, the drafters made clear that one of the Act's primary purposes was to prioritize the child's home state. *See* UNIF. CHILD CUSTODY JUR. & ENF. ACT Prefatory Note, 9 U.L.A. 649–51 (1997). "Home state" means:

> [T]he State in which a child lived with a parent or a
> person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding. *In the case of a child less than six months of age, the term means the State in which the child lived from birth with any of the persons mentioned.*

*See* UNIF. CHILD CUSTODY JUR. & ENF. ACT § 102(7), 9 U.L.A. 658 (1997) (emphasis added); *see also* N.M. STAT. § 40-10A-102(7); TEX. FAM. CODE § 152.102(7).

Section 152.201(a) of the Texas Family Code codified section 201(a) of the Act. The Texas Act also codified the Act's "home state" definition, which gives concrete guidance for instances in which a party sues for custody of a child when the child at issue is less than six months old. *See* TEX. FAM. CODE § 152.102(7). Once the home state is correctly identified, jurisdiction in that state's courts is exclusive unless that state properly cedes jurisdiction based on circumstances the statute prescribes.[11] *See* TEX. FAM. CODE §§ 152.201(b), .202(a) ("Subsection [152.201](a) is the exclusive jurisdictional basis for making a child custody determination by a court of this state" and "a court of this state which has made a child custody determination consistent with [s]ection 152.201 . . . has exclusive continuing jurisdiction over the determination.").

Although the home state cannot be determined before a child is born, it was ascertainable when Carrie filed the New Mexico case and when the Texas and New Mexico courts conferred.

---

[11] For example, judicial findings of unjustifiable conduct by a parent seeking to affect jurisdiction under the statute according to section 208 might result in another state having jurisdiction. *See* UNIF. CHILD CUSTODY JUR. & ENF. ACT § 208, 9 U.L.A. 683–84 (1997).

New Mexico is J.S.D.'s home state—he was born there and has lived there ever since. When the Texas and New Mexico courts discussed the matter, the New Mexico court had not yet declined jurisdiction under the Act, and the Texas court should not have assumed it at that time. Instead, the two courts should have conducted a more complete examination of which state had jurisdiction under the Act to decide custody issues after J.S.D.'s birth.

Whether the Texas divorce action was filed first is irrelevant in determining jurisdiction over custody matters, as the two proceedings involve different inquiries. *See, e.g.*, *Seligman-Hargis v. Hargis*, 186 S.W.3d 582 (Tex. App.—Dallas 2006, no pet.) (holding that trial court's jurisdiction to hear divorce action did not automatically give it authority to decide child custody issues as well); *see also Boots v. Lopez*, 6 S.W.3d 292 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (stating that trial court's jurisdiction to resolve certain issues in divorce action may be limited when it lacks jurisdiction under the Uniform Child Custody Jurisdiction Act). Jurisdiction over custody determinations is governed by the Act, regardless of whether there is an ongoing divorce. *See, e.g., Arnold v. Price*, 365 S.W.3d 455 (Tex. App.—Fort Worth 2011, no pet.) (holding that California, not Texas, was "home state" for child born in California who resided in California from birth until divorce trial, regardless of father's filing for divorce and custody in Texas prior to child's birth); *Waltenburg v. Waltenburg*, 270 S.W.3d 308 (Tex. App.—Dallas 2008, no pet.) (holding that Texas, not Arizona, was child's "home state" immediately upon birth in Texas when child remained in Texas with mother after birth until filing of petition, regardless of father's filing for divorce in Arizona prior to child's birth). That is not to say the divorce proceedings are irrelevant, as they may influence a home state's decision about its forum's convenience. *See, e.g.*, UNIF. CHILD CUSTODY

8

JUR. & ENF. ACT §§ 201(a), 207, 9 U.L.A. 671, 682–83 (1997) (permitting home state to decline jurisdiction if it is an inconvenient forum).  But one state may have jurisdiction over custody even if the divorce is decided by another state's court.  *See* TEX. FAM. CODE § 6.308(a) (stating that a court "may" exercise jurisdiction over portions of a divorce action for which it has authority, not that it must); *see also Boots*, 6 S.W.3d at 294 (noting that "the language of the statute is discretionary, not mandatory" and that "it was within the trial court's discretion whether to exercise partial jurisdiction").

* * *

Richard contends that if section 152.201(a) gives New Mexico exclusive jurisdiction, it is unconstitutional.  He argues that section 152.201(a) violates the separation of powers doctrine and the open courts provision of the Texas Constitution, as well as the Texas Equal Rights Amendment and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. We find these arguments unpersuasive.

The separation of powers doctrine prohibits one branch of government from exercising a power belonging inherently to another.  *See* TEX. CONST. art. II, § 1; *see also Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 600 (Tex. 2001); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993).  The doctrine is violated "'only when the functioning of the judicial process in a field constitutionally committed to the control of the courts is interfered with by the executive or legislative branches.'" *Little-Tex Insulation Co.*, 39 S.W.3d at 600 (quoting *State Bd. of Ins. v. Betts*, 308 S.W.2d 846, 851–52 (Tex. 1958)).  The Texas Constitution provides that "[d]istrict court jurisdiction consists of exclusive, appellate, and original jurisdiction of all actions

9

. . . except in cases where *exclusive . . . jurisdiction may be conferred by this Constitution or other law* on some other court." TEX. CONST. art. V, § 8 (emphasis added).

Richard argues that because section 152.201(a) states that a Texas court has jurisdiction "only if" one of the four statutory scenarios exists, the Legislature has, in essence, prevented the Texas district court from making custody determinations before a child is born. We disagree.

By enacting section 152.201(a), the Legislature did not encroach upon the judiciary's power to interpret laws, nor did it decide whether the Texas trial court had jurisdiction. These determinations, still within the province of the courts, are simply subject to a rationally based policy that appreciates the multi-state arena in which custody determinations often occur. Section 152.201(a) does not violate the separation of powers doctrine.

Richard also contends that section 152.201(a) violates the open courts provision of the Texas Constitution,[12] which provides, "[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. I, § 13. But the right to a remedy by due course of law does not require that the remedy be available *in Texas.*

To establish an open courts violation, Richard must show that (1) he has a well-recognized common law cause of action that is being restricted and (2) the restriction is unreasonable or

---

[12] Richard alleges that section 152.201(a) "violates his remedy by [d]ue [c]ourse of [l]aw" based on the open courts provision under article I, section 13 of our Constitution—not section 19 which addresses due course of law in the context of deprivation of life, liberty, property, privileges, or immunities. *Compare* TEX. CONST. art. I, § 13 (open courts), *with* § 19 ("life, liberty, property, privileges or immunities"). While we have recognized that the open courts provision is a due process guarantee, *see Sax v. Votteler*, 648 S.W.2d 661, 664 (Tex. 1983), Richard's arguments here do not rely on section 19 due process; our discussion here addresses Richard's "due course of law" challenge, specifically in the open courts doctrine context.

arbitrary when balanced against the statute's basis and purpose. *Owens Corning v. Carter*, 997 S.W.2d 560, 573 (Tex. 1999).

Even assuming that Richard can satisfy the first requirement, he has not established the second. In *Sax*, we concluded that a statute "effectively abolishe[d] a minor's right to bring [her] well-established common law cause of action *without providing a reasonable alternative*" and thus violated article I, section 13 of the Texas Constitution. *Sax v. Votteler*, 648 S.W.2d 661, 667 (Tex. 1983) (emphasis added). A statute that otherwise withdraws such common law remedies will be "'sustained only when it is reasonable in substituting other remedies . . . [but will] not [be] sustained when it is arbitrary or unreasonable.'" *Id.* at 665 (quoting *Lebohm v. City of Galveston*, 275 S.W.2d 951, 955 (Tex. 1955)).

Here, Richard argues that if New Mexico is J.S.D.'s home state, the Act deprives him of a remedy *in Texas*. While this is true, requiring Richard to pursue his custody claim in New Mexico rather than Texas preserves a reasonable alternative. Richard may pursue his custody claims in New Mexico, and he has neither pleaded nor proved that New Mexico is an inadequate forum. Section 152.201(a) does not violate the open courts provision of the Texas Constitution.

Lastly, section 152.201(a) violates neither Richard's equal protection rights under the Texas Equal Rights Amendment nor the Fourteenth Amendment to the United States Constitution. The Texas Equal Rights Amendment provides that "[e]quality under the law shall not be denied or abridged because of sex, race, color, creed, or national origin." TEX. CONST. art. I, § 3a. Richard asserts that the home state rule violates this provision because a woman controls where she lives prior to giving birth, and that denies the father the right to participate in prenatal decisions. We have

11

already determined that this contention is not before us, as Carrie has already given birth. But Richard also complains that "home state jurisdiction" unconstitutionally deprives him of immediate post-birth involvement.

We have applied a three-step evaluation to determine whether the Amendment has been violated. *See Bell v. Low Income Women of Texas*, 95 S.W.3d 253, 257–64 (Tex. 2002). First, we consider whether equality under the law has been denied. *Id.* at 257. If it has, we must determine whether equality was denied "*because of* a person's membership in a protected class." *Id.* (emphasis added). If so, "the challenged action cannot stand unless it is narrowly tailored to serve a compelling governmental interest." *Id.*

Richard has not shown that he is denied equality under the law. Section 152.201(a) is a procedural mechanism for determining jurisdiction. The statute defines home state to establish where the proceedings should take place, without a bias for either parent. The *place of birth* is not the relevant consideration. Instead, we look to "the State in which the child lived *from* birth with [a parent or person acting as a parent]." UNIF. CHILD CUSTODY JUR. & ENF. ACT § 102(7), 9 U.L.A. 658 (1997) (emphasis added). Residence is determinative, and it favors neither women nor men. A child could live "from birth" with his father or his mother, and sections 152.102(7) and 152.201(a) would apply with equal force in either scenario.

For the same reasons, we conclude that the statute does not violate Richard's equal protection rights under the Fourteenth Amendment to the United States Constitution.[13] Allowing the New

---

[13] Some commentators suggest that the Texas Equal Rights Amendment may afford even broader rights than the federal Fourteenth Amendment. *See, e.g.*, Linda J. Wharton, *State Equal Rights Amendments Revisited: Evaluating Their Effectiveness in Advancing Protection Against Sex Discrimination*, 36 RUTGERS L.J. 1201, 1203 (2005) (noting

Mexico court to exercise jurisdiction as provided in each state's adopted UCCJEA does not deny Richard equality under the law.[14]

* * *

The New Mexico trial court concluded, correctly, that it had jurisdiction over the custody dispute because New Mexico is J.S.D.'s home state. Yet the New Mexico trial court deferred to Texas. We do not understand the basis for that deferral. As applied to the facts here, the Act would have allowed Texas to exercise jurisdiction only if New Mexico had declined jurisdiction "on the ground that [Texas] . . . is the more appropriate forum . . . under Section 152.207 or 152.208." *See* TEX. FAM. CODE § 152.201(a)(3). But New Mexico's declination was not based on section 207 (inconvenient forum) or section 208 (jurisdiction declined by reason of conduct). *See id.* §§ 152.207–.208. In fact, the New Mexico trial judge emphasized that its decision to decline jurisdiction "was not based upon any finding of unjustifiable conduct or bad acts by either party." Rather, the New Mexico court dismissed the case solely because "Texas has determined it will

---

that "many state courts are interpreting state constitutions as independent, and often broader, sources of protection for individual liberties . . . that go[] well beyond the protection afforded under the Federal Constitution"); *see also* William Wayne Kilgarlin & Banks Tarver, *The Equal Rights Amendment: Governmental Action and Individual Liberty*, 68 TEX. L. REV. 1545, 1559, 1570 (1990) (noting, for instance, that "a wider range of private activities can be attacked under the E[qual] R[ights] A[mendment] than under the [F]ourteenth [A]mendment" and "state constitutional guarantees may confer broader rights").

[14] Richard's challenge under the federal Constitution's Equal Protection Clause also claims that section 152.201(a) violates his fundamental right concerning "the care, custody, and control of [J.S.D.]" under *Troxel v. Granville*, 530 U.S. 57 (2000) (plurality opinion). But aside from his cursory argument that "the UCCJEA deprives him of meaningful participation in the child-custody proceedings by unilaterally choosing [J.S.D.'s] 'home state'," Richard cites no authority for his proposition that a parent's opportunity to choose a "home state" for custody proceedings is a fundamental right. New Mexico is simply the forum in which Richard may litigate for custody.

exercise jurisdiction." We appreciate that trial court's effort to avoid an interstate conflict, but we do not believe the Act allows deferral on that basis.

As it now stands, the New Mexico trial court has jurisdiction, but it has dismissed the case. We anticipate that the New Mexico Court of Appeals, consistent with its reasoning in its proposed summary disposition, will remand the case to the New Mexico trial court, but that has yet to occur. Although the action is pending in the Texas court, we have stayed its proceedings while we decide the merits. During this intolerable interregnum, Carrie, Richard, and J.S.D., seemingly, have nowhere to turn.

There is an answer. We noted in *Powell*[15] that the Act delineates the proper procedure when custody proceedings have been filed in different states:

> If the [Texas] court determines that a child custody proceeding has been commenced in a court in another state having jurisdiction substantially in accordance with this chapter, the [Texas] court . . . shall stay its proceeding and communicate with the court of the other state. *If the court of the state having jurisdiction substantially in accordance with this chapter does not determine that the [Texas] court . . . is a more appropriate forum, the [Texas] court . . . shall dismiss the proceeding.*

TEX. FAM. CODE § 152.206(b) (emphasis added); *see also* N.M. STAT. § 40-10A-206(b) (same). We have determined that the Texas court erred in denying the exclusivity of the New Mexico trial court's jurisdiction. Likewise, the New Mexico Court of Appeals has preliminarily determined that the New Mexico trial court erred in deferring to Texas.

Given the New Mexico court's dismissal and the Texas court's erroneous retention, the appropriate course is for the Texas trial court to confer as soon as possible with the New Mexico

---

[15] *Powell*, 165 S.W.3d at 328 (quoting TEX. FAM. CODE § 152.206(b)).

14

Court of Appeals. Accordingly, without hearing oral argument, TEX. R. APP. P. 52.8(c), we lift our stay and order the Texas court to communicate promptly with the New Mexico Court of Appeals. *See* TEX. FAM. CODE § 152.206(b); *see also Powell*, 165 S.W.3d at 328. Unless that court "decline[s] to exercise jurisdiction on the ground that [Texas] is the more appropriate forum to determine [J.S.D.'s] custody . . . under Section 207 or 208," the trial court shall dismiss the child custody portion of the case. *See* UNIF. CHILD CUSTODY JUR. & ENF. ACT § 201(a)(3), 9 U.L.A. 671 (1997); *see also* N.M. STAT. § 40-10A-201(a)(3); TEX. FAM. CODE § 152.201(a)(3). We are confident the trial court will comply, and our writ will issue only if it does not.

 

 

_____

Wallace B. Jefferson
Chief Justice

OPINION DELIVERED: December 21, 2012