

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-25-00100-CV

———————————————————

IN RE M.Z., Relator

---

Original Proceeding
233rd District Court of Tarrant County, Texas
Trial Court No. 233-748343-24

---

Before Birdwell, Womack, and Walker, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

In this original proceeding, we address whether, under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), Texas is the "home state" of the child (Sarah) of Relator M.Z. and Real Party in Interest A.K.[1]  For the reasons set forth below, we hold that Texas is not Sarah's home state under the UCCJEA.[2]  Consequently, the trial court currently lacks home-state jurisdiction over this child-custody suit.  Accordingly, we will conditionally grant relief.

### II. BACKGROUND

M.Z. and A.K. were married in Texas in June 2023.  Two months later, M.Z. discovered she was pregnant.  M.Z. and A.K. lived together until their separation in early 2024.[3]  M.Z. then moved to Chicago, Illinois, to be with family and filed for divorce in Illinois on February 22, 2024.  A.K. filed for divorce in Texas on March 14, 2024, alleging that M.Z.'s current residence was in Illinois.  Approximately two months later, A.K. filed a motion for alternative service, and in mid-May 2024, M.Z. was served

---

[1]We refer to the child in this action by using an alias and refer to the parents by using their initials.  *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.9(a)(3).

[2]Both Texas and Illinois—the states involved in this proceeding—have adopted the UCCJEA.  *See* Tex. Fam. Code Ann. §§ 152.101–.317; 750 Ill. Comp. Stat. 36/101–403.

[3]The parties dispute the exact date of separation—M.Z. cites the date of separation as January 2024, and A.K. cites the date of separation as "on or about February 11, 2024."

via e-mail with A.K.'s Texas petition. Both divorce petitions were filed prior to Sarah's birth—M.Z.'s Illinois petition did not include a child-custody issue related to an unborn child, but A.K.'s Texas petition did.[4] A.K.'s Texas petition also sought to restrict Sarah's residence to Tarrant County.

Sarah was born in Illinois in May—around the time that M.Z. was served via e-mail. M.Z. did not file a response to A.K.'s Texas petition before the trial court heard the case in June 2024. M.Z. did not appear at the hearing in person or via her attorney.

After the hearing, a default judgment was entered in the Tarrant County divorce proceeding; the judgment included a parenting plan and appointed both M.Z. and A.K. as joint managing conservators of Sarah. In July 2024, M.Z timely filed a "Special Appearance, Plea to the Jurisdiction and Request for Court to Decline Jurisdiction, and, in the Alternative, Plea in Abatement and Motion to Set Aside Default Judgment," claiming that Texas lacked subject-matter jurisdiction over the child-custody part of the proceeding under the UCCJEA, that there was already a pending lawsuit in Illinois, and that her failure to appear at trial was the result of an accident and mistake because she was served on the day Sarah was born. Specifically, M.Z. alleged that Sarah had been born in Illinois and had never resided in Texas. The Tarrant County trial court then set aside the default judgment on July 23, 2024, and implicitly denied M.Z.'s plea to the

---

[4]The mandamus record does not include copies of any amended petitions filed in either state after Sarah was born.

jurisdiction when it declared that it "accept[ed] jurisdiction over this matter." The trial court also set the case for a temporary-orders hearing in August 2024.

M.Z. filed a counterpetition for divorce in Tarrant County in August, and an associate judge entered temporary orders for the divorce and custody matters in October 2024. The temporary orders—with respect to the custody of Sarah—granted M.Z. and A.K. joint managing conservatorship with primary care given to M.Z.,[5] authorized supervised visitation for A.K. in Chicago on the weekends during the day, assigned a child-support amount and start date,[6] and assigned health and dental insurance responsibilities to A.K.

After the October temporary orders were signed, both M.Z. and A.K. filed requests for a de novo hearing.[7] A hearing was conducted in December 2024, when Sarah was approximately seven months old. Both A.K. and M.Z. testified at the hearing. A.K. testified that he had not been able to see his daughter in Chicago and

---

[5]We note that the "primary care" designation in the temporary orders is not part of the statutory language. Under Section 153.134 of the Texas Family Code, when a trial court appoints joint managing conservators, it must then "designate the conservator who has the exclusive right to determine the primary residence of the child." § 153.134(b)(1). For our analysis, we presume the trial court's designation is substantively equal to that allowed by the statute and the trial court intended to comport with the same.

[6]The order does not designate which parent bears the child-support responsibility, but at the hearing, it appeared that the parties understood that it was A.K.'s responsibility.

[7]A.K. requested de novo review on eight issues, and M.Z. requested de novo review on three issues.

4

that it was costly to fly to Chicago and to book a hotel room there. A.K. testified that M.Z. was "imped[ing his] ability" to have a father/daughter relationship with Sarah. Then M.Z. testified that she feared for Sarah's safety if A.K. were to have unsupervised visitation and that he had not attempted to see Sarah since each of them filed requests for the de novo hearing.

At the end of the hearing, the trial court announced that Sarah's residence would be "restricted to Tarrant County" because "[t]he information presented . . . is that the parties were married, child conceived here." The trial court also announced that M.Z. would have "primary possession of the child unless she fails to return to Tarrant County within 30 days." A.K. was permitted visitation with Sarah the first and third Saturdays and Sundays of each month, between 10:00 a.m. and 6:00 p.m. The trial court did not sign a written order at the time of the hearing.

A.K. filed a motion to enter temporary orders and included proposed orders two months later—on February 4, 2025. M.Z. objected to the proposed temporary orders on UCCJEA grounds, claiming that the trial court lacked jurisdiction to enter temporary orders concerning Sarah. M.Z. also informed the trial court that a UCCJEA jurisdictional hearing was set in the Circuit Court of Cook County, Illinois, on March 28, 2025.

Over M.Z.'s objections, the trial court signed the proposed temporary orders on February 21, 2025. As announced at the December hearing, the temporary orders required, among other things, that M.Z. return to Texas with Sarah "on or before

5

January 19, 2025, for the purpose of complying with the ordered geographic restriction on the child's primary residence." The geographic restriction in the written temporary orders confined the child's primary residence to Tarrant County or Dallas County.[8]

M.Z. filed this mandamus petition on March 10, 2025, requesting an emergency stay in all Tarrant County proceedings and claiming that the trial court abused its discretion when it signed temporary child custody orders because Texas does not have jurisdiction over Sarah under the UCCJEA. We ultimately granted[9] M.Z.'s emergency motion to stay all of the underlying proceedings in the Tarrant County trial court while the mandamus petition is pending.

### III. DISCUSSION

### A. Mandamus and UCCJEA Jurisdiction

"Mandamus is appropriate when a trial court has asserted jurisdiction over a child custody matter contrary to the UCCJEA." *In re Brown*, 203 S.W.3d 888, 890 Tex. App.—Fort Worth 2006, orig. proceeding) (citing Tex. Fam. Code Ann. §§ 152.101–

---

[8]The mandamus record includes an undated "Motion for Enforcement of Temporary Orders" brought by A.K., but there is no file stamp or other indicator that it was ever properly filed in the trial court.

[9]We requested a response to the first motion for emergency relief and the mandamus petition. On March 19, 2025, before a response was filed, M.Z. filed a "Second Emergency Motion to Stay the Underlying Proceedings." We granted the second motion for emergency relief on March 20, 2025, ordering that "[a]ll proceedings in the cause number 233-748343-24, styled *In the Matter of the Marriage of A.K. and M.Z. and in the Interest of A.K., a Child* pending in the 233rd District Court of Tarrant County, Texas, are stayed until further order of this court."

.317).  One of the UCCJEA's "primary purposes was to prioritize [a] child's home state." *In re Dean*, 393 S.W.3d 741, 747 (Tex. 2012) (orig. proceeding).  Upon correct identification of a child's home state, "jurisdiction in that state's courts is exclusive unless that state properly cedes jurisdiction based on circumstances the statute prescribes." *Id.*  In this opinion, we consider whether a Texas court had jurisdiction over a custody determination involving Sarah, who was born in Illinois and has lived there all of her life.

## B.  Home-State Determination Under the UCCJEA

Texas has adopted the UCCJEA under Section 152 of the Family Code.  *See* Tex. Fam. Code Ann. §§ 152.101–.317.   Though Texas district courts have general jurisdiction over child-custody matters, Section 152.201 outlines the conditions necessary for Texas to have jurisdiction to make an initial child-custody determination:

> a) Except as otherwise provided in Section 152.204, a court of this state has jurisdiction to make an initial child custody determination only if:
>
>> (1) this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
>>
>> (2) a court of another state does not have jurisdiction under Subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 152.207 or 152.208, and:
>>
>>> (A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

7

(B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(3) all courts having jurisdiction under Subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 152.207 or 152.208; or

(4) no court of any other state would have jurisdiction under the criteria specified in Subdivision (1), (2), or (3).

*Id.* § 152.201(a); *see, e.g.*, *In re D.S.*, 602 S.W.3d 504, 513 (Tex. 2020) ("[T]he UCCJEA articulates circumstances under which the court has, or loses, 'jurisdiction' over child-custody determinations."). "Jurisdiction is statutorily withdrawn if neither the UCCJEA's home-state provision nor any statutory alternative basis for jurisdiction is satisfied." *D.S.*, 602 S.W.3d at 513. "Home state" is "the state in which a child lived with a parent . . . for at least six consecutive months immediately before the commencement of a child custody proceeding." Tex. Fam. Code Ann. § 152.102(7). When a child is less than six months old, "the term [home state] means the state in which the child lived from birth with a parent." *Id.* A child's home state cannot be determined until after the child is born. *Dean*, 393 S.W.3d at 747.

Parties to a custody case "must[] provide information for the trial court to make an appropriate Chapter 152 determination." *D.S.*, 602 S.W.3d at 517. Section 152.209 informs the parties what information shall be given, either in the first pleading or in an attached affidavit, including the "child's present address . . . , the places where the child has lived during the last five years, and the names and present addresses of the persons

with whom the child has lived during that period." Tex. Fam. Code Ann. § 152.209(a). If the information is not properly presented, the trial court may stay the proceeding until the information is furnished to the trial court.[10]  *Id.* § 152.209(b).

## C.  Texas—Not  Sarah's Home State

"Subsection (a) [of Section 152.201] is the exclusive jurisdictional basis for making a child-custody determination by a court of this state."  *Id.* § 152.201(b); *see also Dean*, 393 S.W.3d at 746 ("[U]nless a [Texas] court finds that it has jurisdiction under one of the four enumerated grounds [in Section 152.201], it cannot exercise jurisdiction over a child custody determination.").  Thus, we consider each of the four conditions under Subsection (a) in turn to determine if Texas is Sarah's home state.[11]

---

[10]We note that M.Z. did include an "Affidavit for UCCJEA Information" attached to her Special Appearance and Plea to the Jurisdiction.  The mandamus record does not include a similar affidavit for A.K., nor is the information contained in his first pleading.  The trial court did not stay the proceeding and order the information be furnished.  However, this does not impact our jurisdictional analysis.  *See In re A.S.*, No. 02-14-00301-CV, 2016 WL 1470034, at *3 n.4 (Tex. App.—Fort Worth April 14, 2016, no pet.) (mem. op.) (holding the "failure to comply with [S]ection 152.209 is not jurisdictional").

[11]Subsection (a) applies "[e]xcept as otherwise provided in Section 152.204." Tex. Fam. Code Ann. § 152.201(a).  Section 152.204 outlines conditions for temporary emergency jurisdiction.  *See id.* § 152.204.  A Texas court has temporary emergency jurisdiction "if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse."  *Id.* § 152.204(a). The record contains no allegations or evidence of the need for temporary emergency jurisdiction as outlined in this section.

9

Under Subdivision (1), a child's home state is determined using "the date of the commencement[12] of the proceeding" and where the child has lived since birth with a parent. Tex. Fam. Code Ann. §§ 152.201(a)(1), .102(7). Because Sarah was under six months of age at the time the initial temporary orders were issued in October 2024, a Texas trial court would have jurisdiction under Subdivision (1) if the evidence showed that Sarah had lived in Texas with a parent since her birth to establish Texas as her home state. *See id.* § 152.102(7).

Here, both M.Z. and A.K. filed for divorce prior to Sarah's birth. Consequently, at the time the divorce proceedings were initially filed, neither Illinois nor Texas could have had jurisdiction over the child-custody suit.[13] *See Waltenburg v. Waltenburg*, 270 S.W.3d 308, 318 (Tex. App.—Dallas 2008, no pet.) ("[T]he UCCJEA does not grant jurisdiction to child-custody claims involving unborn children."). And although the mandamus record does not include copies of any amended petitions filed in either

---

[12]"Commencement" is the "filing of the first pleading in a proceeding." *Id.* § 152.102(5).

[13]In addition, which "divorce action was filed first is irrelevant in determining jurisdiction over custody matters, as the two proceedings involve different inquiries." *Dean*, 393 S.W.3d at 747; *see, e.g.*, *Seligman-Hargis v. Hargis*, 186 S.W.3d 582, 586 (Tex. App.—Dallas 2006, no pet.). "Jurisdiction over custody determinations is governed by the [UCCJEA], regardless of whether there is an ongoing divorce." *Dean*, 393 S.W.3d at 747; *see Seligman-Hargis*, 186 S.W.3d at 586 (holding there are circumstances when "the trial court's authority to resolve [dissolution of marriage] issues between the parties may be restricted because the trial court lacks jurisdiction under the UCCJEA" (citing Tex. Fam. Code Ann. § 6.308(b)(2))). Under the UCCJEA, if a home state can be correctly identified, that state has exclusive jurisdiction for a child-custody matter unless it properly cedes jurisdiction. *Dean*, 393 S.W.3d at 746.

state, any premature child-custody claim would have become live at the time of Sarah's birth[14]—in this case, the same time her home state was established. *See Dean*, 393 S.W.3d at 747; *see also* Tex. Fam. Code Ann. § 152.102(7); *Arnold v. Price*, 365 S.W.3d 455, 461–62 (Tex. App.—Fort Worth 2011, no pet.) (holding that for a child younger than six months, the state where the child is born—and living with a parent—becomes the child's home state immediately upon birth). Further, no evidence was presented to show that Sarah has traveled to or lived in Texas since her birth.[15] Thus, under Section 152.201(a)(1)—at the time the pleading in Texas became live—Texas was not Sarah's home state. *See* Tex. Fam. Code Ann. §§ 152.102(7), .201(a)(1); *see also Dean*, 393 S.W.3d at 746.

Under Subdivision (2), Texas courts could have jurisdiction over this child-custody proceeding if no other state is Sarah's home state under Subdivision (1)—or

---

[14]A "child custody proceeding" is "a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue . . . includ[ing] a proceeding for divorce." Tex. Fam. Code Ann. § 152.102(4). As a result, the divorce filings in this case—while not able to influence jurisdiction over child-custody matters or make a child-custody suit live prior to a child's birth—may be viewed as child-custody proceedings that became live at the time Sarah was born.

[15]M.Z. filed an affidavit with her plea to the jurisdiction stating that she has resided in Illinois "since leaving Texas in January 2024." M.Z.'s affidavit details that when A.K. "asked [her] to leave [their] residence and cut [her] off financially," she "immediately moved to Chicago, where [she has] family" and "could get the support [she] needed." She and Sarah "currently reside in Illinois," and "[Sarah] has never resided in Texas." According to her affidavit, M.Z. has "not returned to Texas . . . [or] maintained any significant contacts or ties with Texas" and has "no intention to return to Texas."

the home state has declined jurisdiction under Sections 152.207 or 152.208[16]—and if Sarah and her parents have significant connections with Texas and there is substantial evidence in Texas of Sarah's care, protection, training, and personal relationships. *See* Tex. Fam. Code Ann. § 152.201(a)(2).

Sarah has not lived in or traveled to Texas, and has resided—since her birth—in Illinois with her mother, M.Z. Thus, the only evidence before the trial court establishes Illinois, not Texas, as Sarah's home state. *See id.* § 152.102(7). And the record provided no evidence that Illinois has declined to exercise jurisdiction over Sarah's child-custody proceeding.[17] *See id.* § 152.201(a)(2). According to Subdivision (2), if Illinois is Sarah's home state—and has not ceded its jurisdiction under either Section 152.207 or 152.208—then Texas cannot have home-state jurisdiction over Sarah. *See id.* § 152.206(a).

However, if we accept the trial court's implied finding that Illinois is either not qualified to be Sarah's home state or has relinquished such jurisdiction under the UCCJEA, then "we must inquire" whether Sarah has "'a significant connection with [Texas]' and whether 'substantial evidence is available in [Texas] concerning'" her. *In*

---

[16]Sections 152.207 and 152.208 deal with inconvenient forums and circumstances where jurisdiction was declined by reason of conduct, respectively. *See* Tex. Fam. Code Ann. §§ 152.207, .208.

[17]In fact, according to the parties, the Illinois court has not made any determination related to Sarah's home-state jurisdiction under the UCCJEA, and the next hearing in that court is scheduled for June 11, 2025.

12

*re Barnes*, 127 S.W.3d 843, 847 (Tex. App.—San Antonio 2003, orig. proceeding) (noting the "significant connection" jurisdiction should only be employed if Texas is not the home state and no other state could assert home-state jurisdiction). Because the record indicates that Sarah has never lived in Texas and never visited Texas, her primary connection with Texas is that her father lives here. *See id.* at 847–48. As a result, the record contains insufficient evidence to support a finding of significant connection or substantial evidence.[18]

Under Subdivision (3), a Texas court may exercise initial child-custody jurisdiction if "all courts having jurisdiction under Subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a [Texas] court . . . is the more appropriate forum to determine custody . . . under Section 152.207 or 152.208." Tex. Fam. Code Ann. § 152.201(a)(3). Here, there is no evidence that an Illinois court does not have jurisdiction or that it had declined to exercise such jurisdiction because Texas is the more appropriate forum under either Section 152.207 or 152.208. Because the majority of the evidence before the trial court supports that Illinois is likely the home state under Subdivision (a)(1), Texas may not exercise initial custody jurisdiction over Sarah without evidence that Illinois has declined jurisdiction under Section 152.207 or 152.208. *Id.*; *see Barnes*, 127 S.W.3d at 848.

---

[18]At the December 2024 hearing, A.K. testified that M.Z. has family members who reside in Texas, but there was no testimony regarding the nature of those relationships. Thus, they likewise do not provide evidence to support either a significant connection or substantial evidence under Section 152.201(a)(2).

Under Subdivision (4), a Texas court would have initial child-custody jurisdiction if "no court of any other state would have jurisdiction under the criteria specified in Subdivision (1), (2), and (3)." Tex. Fam. Code Ann. § 152.201(a)(4). Similar to Subdivision (3), Subdivision (4) states that Texas may take initial jurisdiction only if there is evidence that Illinois has declined jurisdiction under the UCCJEA. *Id.*; *see Barnes*, 127 S.W.3d at 848. As there is no evidence that Illinois has declined jurisdiction over the custody matter, Texas is not authorized to take jurisdiction over Sarah's initial custody determination under Subdivision (4). *See Arnold*, 365 S.W.3d at 462.

None of the four exclusive circumstances listed in Section 152.201(a) exist in this case to give Texas courts the home-state jurisdiction to make an initial custody determination for Sarah.

**D. RPI's Response to Mandamus Petition**

In A.K.'s response, he concedes that Sarah was born in Illinois and makes no argument that she has been to Texas since her birth. A.K. also admits that questions related to Sections 152.207 and 152.208 have not been answered and should be answered by the Illinois court. Accordingly, he argues that Section 152.206—dealing with simultaneous proceedings—is applicable here. We agree insofar that Family Code Section 152.206(b) requires certain steps when child-custody proceedings have been filed in different states. *See Powell*, 165 S.W.3d at 328. When this occurs, Subsection (b) requires that "the [Texas] court shall stay its proceeding and communicate with the court of the other state." Tex. Fam. Code Ann. § 152.206(b). Then, "[i]f the court of

14

the state having jurisdiction substantially in accordance with this chapter does not determine that the [Texas] court . . . is a more appropriate forum, the [Texas] court . . . shall dismiss the proceeding." *Id.* Here we have determined that Texas cannot exercise child-custody jurisdiction over this case without a determination from Illinois—and the most expeditious way to achieve that is for the trial court to follow the procedure outlined in Section 152.206(b).

## IV. CONCLUSION

We conditionally grant relief. We lift the March 20, 2025 temporary emergency stay that we granted and order the trial court to follow all of the procedures outlined in Section 152.206(b) and communicate promptly with the Illinois court.[19] *See* Tex. Fam. Code Ann. §§ 152.201(a)(2), .206(b). Unless the Illinois court declines jurisdiction according to the UCCJEA,[20] the trial court must dismiss the child-custody part of this case. *See Dean*, 393 S.W.3d at 750.

---

[19]We emphasize that because the trial court does not presently have jurisdiction under Section 152.201(a) over this matter, the temporary orders issued on February 21, 2025, are not presently enforceable. Additionally, Section 152.206(b) mandates that the trial court stay its own proceeding while it is in communication with the Illinois court. *See id.* § 152.206(b).

[20]The Illinois court may properly decline jurisdiction if it determines that Texas is a more "appropriate forum" or if it finds that it should decline jurisdiction because of "unjustifiable conduct." *See Dean*, 393 S.W.3d at 750; *see also* Tex. Fam. Code Ann. § 152.201(a)(2).

15

We are confident that the trial court will comply with this opinion, and our writ will issue only if the trial court fails to comply. Any other relief requested by Relator is denied.

/s/ Dana Womack

Dana Womack
Justice

Delivered: May 2, 2025