Opinion filed June 26, 2014



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00043-CV
_____

## IN THE INTEREST OF B.Q.S., III, A CHILD

**On Appeal from the 158th District Court**
**Denton County, Texas**
**Trial Court Cause No. 2012-20640-158**

### MEMORANDUM OPINION

Wendy M., Appellee, is the mother of B.Q.S., III, a child. Wendy filed a petition to adjudicate parentage in which she asked the trial court to adjudicate that Brent S., Appellant, is the child's father. Wendy served Brent with the petition, but he did not answer the petition. After a hearing, the trial court entered a default order of parentage against Brent. The trial court adjudicated Brent a parent of the child, and it ordered, among other things, Brent to pay Wendy child support and retroactive child support. Brent filed a motion for new trial. After a hearing, the trial court entered an order denying the motion. Brent has filed this appeal. We reverse and remand.

*Background*

Wendy filed her petition to adjudicate parentage on August 10, 2012. She alleged in the petition that the child was born in New Orleans, Louisiana, on December 31, 1996. She stated that service of process could be had on Brent in New Orleans, Louisiana. Wendy requested in the petition that she be appointed a joint managing conservator of the child with the exclusive right to designate the primary residence of the child. Wendy also requested the trial court to enter appropriate orders related to access to the child, allocation of the rights and duties of the conservators, and child support, including retroactive child support.

Brent was served with Wendy's petition on August 20, 2012, at his New Orleans address. He did not file an answer to the petition. On October 2, 2012, the trial court held a default judgment hearing. Wendy testified at the hearing. She said that Brent was the child's father. Wendy also said that she was aware that Brent made over $330,000 per year. After the hearing, the trial court entered its order of parentage in which it adjudicated Brent the father of the child, appointed Wendy and Brent as joint managing conservators of the child, provided for visitation of the child, and ordered Brent to pay Wendy child support of $1,500 per month and retroactive child support of $90,000.

On November 8, 2012, Brent filed a motion for new trial, and on November 13, 2012, he filed an amended motion for new trial. Brent asserted that he was entitled to a new trial because he had satisfied the *Craddock*[1] elements for obtaining a new trial. On November 14, 2012, the trial court signed an order granting Brent's motion for new trial.

On November 16, 2012, Brent filed, in a single document, a special appearance, a plea to the jurisdiction, a request for the trial court to decline jurisdiction, and an original answer to Wendy's petition to adjudicate parentage.

---

[1]*Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124 (Tex. 1939).

The trial court set the special appearance and plea to the jurisdiction for hearing on December 18, 2012. At the hearing, the trial court announced that it had signed the order granting Brent's motion for new trial on November 14, 2012. Wendy's counsel responded by stating that he had not received notice of a hearing on the motion for new trial or of the trial court's order granting the motion. The trial court acknowledged that it had mistakenly signed the order. Wendy's counsel agreed to file a motion to set aside the order. The trial court indicated that it would grant the motion to set aside the order and that the parties could then have a hearing on Brent's motion for new trial. The trial court did not conduct a hearing on Brent's special appearance and plea to the jurisdiction.

Wendy's counsel subsequently filed a motion to set aside the order granting the motion for new trial. The trial court entered an order granting the motion, and it scheduled Brent's motion for new trial for hearing on January 2, 2013. Brent testified by telephone at the hearing. Wendy also testified. After the testimony, the trial court heard arguments from counsel as to whether Brent had satisfied the *Craddock* elements for a new trial. On January 22, 2013, the trial court entered an order denying Brent's motion for new trial. Brent has filed this appeal.

*Issues Presented*

Brent presents three issues for review. In his first issue, he contends that the trial court erred when it entered its order of parentage because the trial court lacked personal jurisdiction over him and because the trial court lacked subject-matter jurisdiction over the case. In his second issue, Brent contends that the trial court erred when it ordered him to pay retroactive child support because the evidence at the default judgment hearing was insufficient to support the award of retroactive child support. In his third issue, Brent contends that the trial court erred by failing to grant his motion for new trial because he satisfied the *Craddock* requirements for a new trial.

3

*Jurisdictional Issues*

We first address Brent's contention that the trial court lacked personal jurisdiction over him. Brent challenged the trial court's personal jurisdiction over him in his special appearance. Unlike subject-matter jurisdiction, a lack of personal jurisdiction may be waived. *Arnold v. Price*, 365 S.W.3d 455, 458 (Tex. App.—Fort Worth 2011, no pet.); *McGuire v. McGuire*, 18 S.W.3d 801, 804 (Tex. App.—El Paso 2000, no pet.). A defendant who attempts to enter a special appearance to challenge a court's jurisdiction must strictly comply with Rule 120a of the Rules of Civil Procedure in order to avoid making a general appearance. TEX. R. CIV. P. 120a; *Landry v. Daigrepont*, 35 S.W.3d 265, 267 (Tex. App.—Corpus Christi 2000, no pet.).

Rule 120a contains due-order-of-pleading and due-order-of-hearing requirements. *See First Oil PLC v. ATP Oil & Gas Corp.*, 264 S.W.3d 767, 776 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). Specifically, Rule 120a(1) provides that a special appearance motion must be filed "prior to [a] motion to transfer venue or any other plea, pleading or motion." Rule 120a(2) provides that a special appearance motion "shall be heard and determined before a motion to transfer venue or any other plea or pleading may be heard." A defendant who files a special appearance must timely request a hearing, specifically bring that request to the trial court's attention, and secure a ruling on the preliminary question of personal jurisdiction. *Milacron Inc. v. Performance Rail Tie, L.P.*, 262 S.W.3d 872, 875–76 (Tex. App.—Texarkana 2008, no pet.). A defendant waives his special appearance by not timely pressing for a hearing. *Id.* at 876. A special appearance not ruled upon by the trial court presents nothing for review. *Wilson v. Chemco Chem. Co.*, 711 S.W.2d 265, 266 (Tex. App.—Dallas 1986, no writ).

In this case, Brent did not comply with the due-order-of-pleading requirement or the due-order-of-hearing requirement of Rule 120a. He filed his

motion for new trial, and the trial court entered an order granting the motion, albeit mistakenly, before he filed his special appearance. Brent obtained a setting for a hearing on his special appearance, and his counsel appeared for the hearing. However, before the trial court heard the special appearance, the trial court discovered that it had signed the order granting Brent's motion for new trial. The trial court did not conduct a hearing on the special appearance. Instead, the trial court signed an order setting aside its order granting Brent's motion for new trial. The trial court then conducted a hearing on the motion for new trial and denied the motion. The trial court ultimately did not rule on the special appearance.

Brent made a general appearance by filing and presenting argument on his motion for new trial before his special appearance was determined. *Landry*, 35 S.W.3d at 267–68. Therefore, he waived his special appearance and his claim that the trial court lacked personal jurisdiction over him.

Brent also challenges the trial court's subject-matter jurisdiction. Subject-matter jurisdiction is never presumed, cannot be waived, and can be raised at any time. *Alfonso v. Skadden*, 251 S.W.3d 52, 55 (Tex. 2008); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993). Whether a court has subject-matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). To invoke the trial court's subject-matter jurisdiction, the party bringing the suit must allege facts that affirmatively demonstrate that the court has jurisdiction to hear the case. *Id.* at 226; *Tex. Air Control Bd.*, 852 S.W.2d at 446. We consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Miranda*, 133 S.W.3d at 227.

In this case, Wendy's petition to adjudicate parentage included requests for the trial court to make orders for the custody, conservatorship, and visitation of the child. Subject-matter jurisdiction in child custody matters is determined by

reference to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), which is set forth in Chapter 152 of the Texas Family Code. *See* TEX. FAM. CODE ANN. §§ 152.001–.317 (West 2014); *In re Dean*, 393 S.W.3d 741, 746 (Tex. 2012); *In re Milton*, 420 S.W.3d 245, 270 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding). Section 152.201 of the Family Code provides the exclusive jurisdictional basis for a Texas court to make a child custody determination. *In re Dean*, 393 S.W.3d at 746.

Section 152.102(3) of the Family Code defines a "child custody determination" as "a judgment, decree, or other order of a court providing for legal custody, physical custody, or visitation with respect to a child." Section 152.102(4) defines a "child custody proceeding" as "a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue." The term "child custody proceeding" includes "a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights, and protection from domestic violence in which the [custody] issue may appear." FAM. § 152.102(4). Under Section 152.102, "legal custody" is defined as "the managing conservatorship of a child"; "physical custody" is defined as "the physical care and supervision of a child"; and "visitation" is defined as "the possession of or access to a child." *Id.* § 152.102(11), (14), (16). The term "initial determination" is defined as "the first child custody determination concerning a particular child." *Id.* § 152.102(8).

In her petition, Wendy sought an initial determination concerning the custody of the child. Under Section 152.201(a), a Texas court has subject-matter jurisdiction to make an initial child custody determination only if:

> (1) this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and

the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(2) a court of another state does not have jurisdiction under Subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 152.207 or 152.208, and:

(A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(3) all courts having jurisdiction under Subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 152.207 or 152.208; or

(4) no court of any other state would have jurisdiction under the criteria specified in Subdivision (1), (2), or (3).

*Id.* § 152.201(a).

Brent is a Louisiana resident. Section 152.209(a) of the Family Code provides that, if a party to a child custody proceeding is not a Texas resident, "each party, in its first pleading or in an attached affidavit, shall give information, if reasonably ascertainable, under oath as to the child's present address or whereabouts, the places where the child has lived during the last five years, and the names and present addresses of the persons with whom the child has lived during that period." In this case, Wendy did not provide the information required by Section 152.209.

7

The trial court had jurisdiction over the child custody proceeding if Texas was the child's home state. *Id.* § 152.201(a)(1). As relevant to this case, a child's home state is "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." *Id.* § 152.102(7). The date of the commencement of the child custody proceeding is the reference point from which to determine the child's home state for the purpose of determining jurisdiction. *In re Brown*, 203 S.W.3d 888, 891 (Tex. App.—Fort Worth 2006, orig. proceeding); *In re Oates*, 104 S.W.3d 571, 577 (Tex. App.—El Paso 2003, orig. proceeding). "Commencement" is defined as "the filing of the first pleading in a proceeding." FAM. § 152.102(5).

Wendy commenced this child custody proceeding on August 10, 2012, when she filed her petition to adjudicate parentage. Accordingly, August 10, 2012, is the reference point for determining the child's "home state." Wendy alleged in her petition that the child was born in New Orleans, Louisiana. Wendy did not make any allegations or provide any information as to where and with whom the child had lived during his lifetime. Thus, Wendy's allegations did not show that the child had lived in Texas for the requisite six-month period before the case was commenced. Wendy failed to meet her burden to allege facts that affirmatively showed that the trial court had subject-matter jurisdiction over the child custody proceeding.

Brent submitted an affidavit as an exhibit to his plea to the jurisdiction. In the affidavit, Brent stated the addresses where the child had lived for the last five years and also provided the names and addresses of the persons with whom the child had lived during that time period. Brent stated that the child had lived with Wendy in Texas from June 1, 2012, to October 26, 2012. Brent also stated that the child had lived with him in New Orleans from August 1, 2011, to June 1, 2012.

8

Wendy's testimony at the default judgment hearing was consistent with Brent's affidavit. According to Wendy's testimony, the child attended school in New Orleans during the 2011–2012 school year, and Wendy went to New Orleans to get the child in the summer of 2012.

The record shows that the child had lived in Texas for less than three months (June 1, 2012, to August 10, 2012) when Wendy commenced this proceeding. As such, Texas was not the child's "home state" for the purpose of determining jurisdiction. The trial court did not have subject-matter jurisdiction of the child custody proceeding under Section 152.201(a)(1). Wendy did not allege, nor did the evidence show, that the trial court had subject-matter jurisdiction under Section 152.201(a)(2), (3), or (4). *See* FAM. § 152.201(a)(2), (3), (4). Thus, the record does not show that the trial court had subject-matter jurisdiction of the child custody proceeding.

As stated above, the trial court set a hearing on Brent's special appearance and his plea to the jurisdiction on December 18, 2012. At that time, the trial court made statements indicating that it believed it had "home state" subject-matter jurisdiction over the case because the child had then lived with Wendy in Texas for more than six months. However, "home state" jurisdiction must be determined based on the circumstances that existed on the date the suit was commenced. *In re Burk*, 252 S.W.3d 736, 740 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding); *In re McCoy*, 52 S.W.3d 297, 304–05 (Tex. App.—Corpus Christi 2001, orig. proceeding.). In this case, the trial court did not have subject-matter jurisdiction when the suit was commenced. The trial court could not later acquire jurisdiction when the child had lived in Texas for six months.

Brent's first issue is sustained to the extent that he complains that the trial court lacked subject-matter jurisdiction over the child custody proceeding aspect of the case. The remainder of Brent's first issue is overruled.

*Child Support*

Child support orders are specifically excluded from the definition of a "child custody determination." *See* FAM. § 152.102(3). Therefore, the trial court did not lack subject-matter jurisdiction to decide the child support issues. In the default order of parentage, the trial court ordered Brent to pay Wendy child support in the amount of $1,500 a month and retroactive child support in the amount of $90,000. Brent contends in his second issue that the evidence was insufficient to support the trial court's award of retroactive child support.

A trial court has discretion to set child support within the parameters provided by the Texas Family Code. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011). A trial court's order of child support will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). A trial court abuses its discretion when it acts without reference to guiding rules or principles. *Iliff*, 339 S.W.3d at 78; *Worford*, 801 S.W.2d at 109. Under the abuse-of-discretion standard, legal and factual sufficiency challenges to the evidence are not independent grounds for asserting error but are relevant factors to consider in assessing whether the trial court abused its discretion. *In re J.D.D.*, 242 S.W.3d 916, 920 (Tex. App.—Dallas 2008, pet. denied.); *Child v. Leverton*, 210 S.W.3d 694, 696 (Tex. App.—Eastland 2006, no pet.). We employ a two-pronged inquiry to determine whether legal or factual sufficiency of the evidence has resulted in an abuse of discretion: (1) whether the trial court had sufficient information upon which to exercise its discretion and (2) whether the trial court erred in its application of discretion. *Marquez v. Moncada*, 388 S.W.3d 736, 739 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *Child*, 210 S.W.3d at 696. A trial court does not abuse its discretion when there is some evidence of a probative and substantive character to support its order.

*Newberry v. Bohn-Newberry*, 146 S.W.3d 233, 235 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

Wendy was the only witness at the default judgment hearing. Wendy testified about Brent's income as follows:

> Q. Okay. Now, I'd like to ask you some questions regarding his income. What kind of business is Mr. Smith in?
>
> A. He's a certified CPA.
>
> Q. Okay. And you know he has had a very successful practice; is that correct?
>
> A. Very much so.
>
> Q. And you're aware that he makes over $330,000 per year; is that correct?
>
> A. Yes.
>
> Q. Is he a specialized CPA of any kind, or does -- he has some very large clients or what?
>
> A. Yes, he has business and personal.
>
> Q. Okay. And then -- and you have seen records of his which indicate his income is over 330,000 a year; is that correct?
>
> A. Yes.
>
> Q. Well, and you're asking the Court to set a child support amount which is consistent with the Texas Family Code, the child support guidelines, even though he makes an amount in excess of $15,000 per month, correct?
>
> A. Yes.

In *Newberry*, the trial court entered a default judgment that required the appellant to pay $1,500 a month in child support. 146 S.W.3d at 234–35. In a

restricted appeal, the appellant challenged the sufficiency of the evidence to support the child support award. *Id.* At the default judgment hearing, the appellee provided the following testimony about the appellant's income:

> Q: Is it fair to say your husband makes $150,000 a year?
>
> A: Yes.
>
> Q: You are asking for [$]1500 in child support pursuant to [the] Guidelines?
>
> A: Yes.

*Id.* at 235. The court concluded that the appellee's uncontroverted testimony provided some evidence of a substantive and probative character to support the trial court's decision to order the appellant to pay $1,500 in child support per month and that, therefore, the appellant had failed to show error on the face of the record. *Id.* at 236.

In this case, Wendy's testimony was similar in nature to the appellee's testimony in *Newberry*. Wendy's testimony, like the appellee's testimony in *Newberry*, was very limited. Wendy answered two leading questions as to the amount of Brent's yearly income. Based on Wendy's uncontroverted testimony, the trial court ordered Brent to pay $1,500 a month in child support. Brent does not challenge the sufficiency of the evidence to support the future child support obligations. Instead, unlike *Newberry*, this case involves a sufficiency challenge to an award of retroactive child support.

On a finding of parentage, a trial court may order retroactive child support as provided in Chapter 154 of the Family Code. FAM. § 160.636(g). Section 154.009(b) provides that, "[i]n ordering retroactive child support, the court shall apply the child support guidelines provided by this chapter." Section 154.131(a) provides that "[t]he child support guidelines are intended to guide the

court in determining the amount of retroactive child support, if any, to be ordered." Section 154.131(b) provides:

> In ordering retroactive child support, the court shall consider the net resources of the obligor during the relevant time period and whether:
>
>> (1) the mother of the child had made any previous attempts to notify the obligor of his paternity or probable paternity;
>>
>> (2) the obligor had knowledge of his paternity or probable paternity;
>>
>> (3) the order of retroactive child support will impose an undue financial hardship on the obligor or the obligor's family; and
>>
>> (4) the obligor has provided actual support or other necessaries before the filing of the action.

At the default judgment hearing, Wendy testified that the child had lived with Brent off and on over the past several years. Wendy said that the child had gone to private school in New Orleans during the 2011–2012 school year and that Brent had paid for the child's school expenses. Wendy also provided the following testimony:

> Q. Okay. Now, [Brent] has provided some support over the years; is that correct?
>
> A. Not 100 percent.

Wendy also said that Brent had paid the child's school expenses and other expenses in the past. Wendy acknowledged that, based on what Brent had provided, the child's lifestyle had been "fabulous." However, Wendy did not provide any testimony as to the amount of actual support that Brent had provided

13

over the years. Nor did Wendy provide any testimony that showed Brent's net resources over the relevant time period.

Wendy's limited testimony at the default judgment hearing was insufficient to support the trial court's award of retroactive child support. The record shows that Brent had provided significant actual support to the child in the past. The child had lived with Brent off and on over the years. Because Wendy failed to present evidence as to the amount of actual support or other necessaries that Brent had provided the child in the past, we conclude that the trial court did not have sufficient information upon which to exercise its discretion with respect to an award of retroactive child support. The record lacks evidence of a substantive and probative character to support the award. The trial court abused its discretion when it ordered Brent to pay Wendy $90,000 in retroactive child support. Brent's second issue is sustained.

*Trial Court's Denial of Motion for New Trial*

Brent contends in his third issue that the trial court erred when it denied his motion for new trial because he met all the requirements of the *Craddock* test. We review a trial court's decision to deny a motion for new trial under an abuse of discretion standard. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010). Under *Craddock*, a trial court must set aside a default judgment and grant a new trial if (1) the failure of the defendant to answer before judgment was not intentional or the result of conscious indifference, but was due to a mistake or an accident; (2) the motion for new trial sets up a meritorious defense; and (3) the granting of a new trial will not result in delay or otherwise injure the plaintiff. 133 S.W.2d at 126; *see also In re R.R.*, 209 S.W.3d 112, 114–15 (Tex. 2006). When a movant meets all three elements of the *Craddock* test, the trial court abuses its discretion if it fails to grant a new trial. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 925 (Tex. 2009).

14

As to the first element of the *Craddock* test, consciously indifferent conduct occurs when a defendant knew he was sued but did not care. *Sutherland v. Spencer*, 376 S.W.3d 752, 755 (Tex. 2012); *Fidelity & Guar. Ins. Co. v. Drewery Constr. Co.*, 186 S.W.3d 571, 575–76 (Tex. 2006). This standard requires a showing of more than mere negligence. *Smith v. Babcock & Wilcox Constr. Co.*, 913 S.W.2d 467, 468 (Tex. 1995). Generally, some excuse, although not necessarily a good one, will suffice to show that a defendant's failure to file an answer was not because the defendant did not care. *R.R.*, 209 S.W.3d at 115.

As to the second element of the *Craddock* test, a meritorious defense is one that, if proved, would cause a different result upon a retrial of the case, although it need not be a totally opposite result. *Jaco v. Rivera*, 278 S.W.3d 867, 873 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *Ferguson & Co. v. Roll*, 776 S.W.2d 692, 698 (Tex. App.—Dallas 1989, no writ). Setting up a meritorious defense does not require proof "in the accepted sense." *Dolgencorp*, 288 S.W.3d at 927–28 (quoting *Ivy v. Carrell*, 407 S.W.2d 212, 214 (Tex. 1966)). Rather, the motion sets up a meritorious defense if it alleges facts that in law would constitute a defense to the plaintiff's cause of action and if the motion is supported by affidavits or other evidence providing prima facie proof that the defendant has such a defense. *Id.* If these requirements are met, controverting evidence offered by the nonmovant should not be considered. *Id.*

As to the third element of the *Craddock* test, the defendant must represent that granting the motion for new trial will not cause delay or otherwise injure the plaintiff. *Estate of Pollack v. McMurrey*, 858 S.W.2d 388, 393 (Tex. 1993); *In re Adams*, 416 S.W.3d 556, 562 (Tex. App.—Tyler 2013, orig. proceeding). This representation shifts the burden to the plaintiff to demonstrate injury. *McMurrey*, 858 S.W.2d at 393; *Adams*, 416 S.W.3d at 562.

15

The record shows that Brent was served with citation in this case at his address in New Orleans on August 20, 2012. The trial court conducted the default judgment hearing on October 2, 2012, and it entered the default order of parentage on October 19, 2012.

Brent testified by telephone at the hearing on his motion for new trial. He said that he was sixty-one years old, was an accountant, and had lived in New Orleans most of his life. Brent said that he had had a stroke in 2010 that had minimally affected his speech and ability to communicate.

Brent acknowledged that he was served in this case. Brent said that, at that time, he did not know that he needed to hire a Texas attorney to represent him in the case. He said that he took the suit papers to Ms. Mitchell, a New Orleans attorney, and that he hired her to represent him in connection with the case. Brent thought that Mitchell was going to handle everything. Brent testified that, on September 4, 2012, Mitchell filed a suit on his behalf in New Orleans in which he sought custody of the child.

Brent testified that, at some point, Mitchell told him that he needed to hire a Texas attorney to represent him in the Texas case. Brent said that he tried to hire a Texas attorney in September. In early September, Brent tried to contact an attorney who practiced in Dallas. Brent said that he made numerous calls to the attorney and left messages for the attorney to call him back but that the attorney did not call him back. Brent told Mitchell that the attorney had not called him back. Mitchell asked Brent whether he had paid the attorney. He told her that he had not paid the attorney. Mitchell told Brent that he had to pay the attorney. Brent testified that he did not know he was supposed to pay the Dallas attorney because he had paid her. Brent said that he made additional calls to the Dallas attorney's office and that a paralegal at the office repeatedly told him that the

attorney would call him back. However, the attorney did not call him back. Brent said that he made calls to the Dallas attorney's office for at least a month.

Brent testified that Mitchell told him that she would ask the bar association for a recommendation as to an attorney to represent him. Later, Brent hired Texas counsel to represent him in this case. Brent filed his motion for new trial in this case on November 8, 2012, and he filed an amended motion for new trial on November 13, 2012. Brent's counsel signed an affidavit in support of the amended motion. In the affidavit, Brent's counsel stated that Brent had contacted him in early October about hiring him in this case but that the hiring was delayed because the only means available for Brent to correspond with him was by regular mail. Brent's counsel stated that "[he] had to wait on [Brent] to send payment along with the attorney-client agreement." Brent's counsel also stated that the use of regular mail delayed Brent's filing of a plea to the jurisdiction in this case. According to Brent's counsel, he sent a challenge to the jurisdiction to Brent that needed to be verified by Brent. Brent's counsel stated that he learned about the default judgment in this case before he received the verified document back from Brent.

Brent testified that none of his counsel told him that a default judgment could be taken against him if he did not timely answer the suit. Brent said that he read the citation but did not understand from reading it that a default judgment could be taken if he did not answer the suit. He said that he let his attorneys handle the case. He believed that he learned about the default judgment in late October.

The evidence showed that Brent hired Mitchell to represent him soon after he was served with Wendy's petition. Brent believed that Mitchell was going to handle everything. Mitchell filed the custody proceeding in New Orleans fifteen days after Brent was served in this case. In addition to hiring Mitchell, and based on Mitchell's advice, Brent also tried to hire a Texas attorney in early September 2012. Brent said that he made numerous calls to the attorney but that the attorney

17

did not return his calls. In early October, Brent first contacted his counsel in this case. Brent hired his counsel, and their efforts to work together were delayed somewhat due to Brent's use of regular mail instead of a more expedited manner to send and receive correspondence.

Brent could have been more diligent in his efforts to hire Texas counsel, and he could have found a more appropriate way to correspond with his counsel. Thus, he may have been negligent in connection with his failure to timely file an answer. However, as stated above, negligence does not arise to consciously indifferent conduct under *Craddock*. *Smith*, 913 S.W.2d at 468. Rather, the *Craddock* standard is one of intentional or conscious indifference: whether Brent knew he was sued but did not care. *Fidelity*, 186 S.W.3d at 575–76.

The facts do not demonstrate that Brent knew he was sued but did not care. To the contrary, the steps that Brent took to hire counsel and his hiring of counsel, both in Louisiana and in Texas, show that he cared about responding to the suit. Brent thought that his Louisiana counsel would represent him in this case. Brent relied on his Louisiana and Texas counsel to represent him. Brent was delayed in hiring counsel because the first Texas attorney did not return his calls. Brent's excuse for failing to timely file an answer—his reliance on counsel, his confusion as to the need to hire Texas counsel, and the amount of time it took to hire Texas counsel—was sufficient to satisfy the first *Craddock* element. We conclude that Brent's failure to answer the suit before the trial court entered the default judgment was not intentional or the result of conscious indifference but was due to mistake or accident. Brent satisfied the first element of the *Craddock* test.

Brent alleged in his motion for new trial that he had a meritorious defense based on a lack of subject-matter jurisdiction. Specifically, Brent alleged that Louisiana, and not Texas, was the child's home state for the purpose of determining subject-matter jurisdiction. The evidence showed that Brent had filed

18

a custody petition in Louisiana. Above, we concluded that the trial court did not have subject-matter jurisdiction over the child custody proceeding aspect of this case. If proved, a lack of subject-matter jurisdiction would cause a different result upon retrial of the case; therefore, Brent set up a meritorious defense in his motion for new trial. *See Jaco*, 278 S.W.3d at 873. Brent satisfied the second element of the *Craddock* test.

The trial court entered the default order of parentage on October 19, 2012. Brent filed his amended motion for new trial on November 13, 2012. Brent stated in his motion that "[g]ranting Movant's request will cause neither delay nor cause injury to Non-Movant" and that "Movant is ready for trial and will reimburse Non-Movant for reasonable expenses incurred in obtaining the default judgment." Once Brent made these representations, the burden shifted to Wendy to show injury. *McMurrey*, 858 S.W.2d at 393. Wendy did not present evidence in an effort to show that the granting of the motion would cause injury to her. Thus, she did not meet her burden to show injury or undue delay. Brent satisfied the third element of the *Craddock* test.

Because Brent satisfied all three elements of *Craddock*, we conclude that the trial court abused its discretion when it denied Brent's motion for new trial. Brent's third issue is sustained.

### *This Court's Ruling*

For the reasons stated above, we reverse the order of parentage of the trial court, and we remand this cause to the trial court for further proceedings consistent with this opinion.

June 26, 2014                          JOHN M. BAILEY

Panel consists of: Wright, C.J.,             JUSTICE
Willson, J., and Bailey, J.