

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-15-00329-CV

IN THE INTEREST OF A.J.,
A MINOR CHILD

----------

FROM THE 360TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 360-583535-15

----------

## MEMORANDUM OPINION[1]

----------

In unnumbered issues, Appellant N.E.H., A.J.'s alleged father (Father), contends that the trial court abused its discretion by granting the plea to the jurisdiction of Appellee K.A.J., A.J.'s mother (Mother), and by awarding her attorney's fees and costs. Because we hold that the trial court did not have home state jurisdiction, did not abuse its discretion by awarding Mother's trial

---

[1]*See* Tex. R. App. P. 47.4.

counsel $2,000 in attorney's fees, and did not award Mother costs, we affirm the trial court's order.

## I. Facts and Procedural History

Mother and Father met online in June 2013. She told him that she was pregnant in September 2013, a day after he broke up with her. Mother and Father discussed her pregnancy further in January 2014, and she told him that she could "almost guarantee" that he was the father. He told her that he "had nothing else to offer her," to let him know when the baby was due, and that he would meet her at the hospital after the baby was born to take a DNA test. Father testified that he made several attempts to contact Mother in March and April 2014 with no success. A.J. was born May 8, 2014.

Mother testified that she did not know who the father was when A.J. was born; she did not notify Father at that time. Mother and A.J. moved to New York two months after A.J.'s birth; Mother did not let Father know that she was moving.

Mother and Father did not speak again until March 2015, when A.J. was ten months old. Mother called Father to discuss A.J. and told him that he was the biological father. A DNA test dated March 18, 2015 confirmed that he was the father. He testified that he knew that he was the father when he took the test.

Father visited the baby in New York at Mother's invitation on two separate occasions, and Mother visited Texas twice with A.J., allowing Father to keep the baby for days at a time. Father told Mother that he could not both pay child

2

support and visit the child, but he did give Mother small amounts of money on her two visits to Texas, and he sent diapers and a car seat to New York when asked.

On September 23, 2015, while Mother and A.J. were visiting Texas for a few days, Father filed a petition to adjudicate parentage in a Tarrant County, Texas family district court. Father's original petition identifies New York as A.J.'s "State of Residence." In addition to the establishment of his parent-child relationship with A.J., Father sought temporary orders appointing him as joint managing conservator with the exclusive right to designate her primary residence and other temporary relief. He further sought and obtained an ex parte temporary restraining order (TRO) restraining Mother from (i) disturbing the peace of A.J. or of another party; (ii) hiding or secreting A.J. from Father; (iii) making disparaging remarks regarding Father or his family in A.J.'s presence or within her hearing; and (iv) making changes to A.J.'s insurance coverage. The trial court issued the TRO on September 23, 2015, and set a hearing for October 5, 2015.

Father had Mother served at his place of employment when she arrived to pick up A.J., who was then in Father's possession. Father refused to return A.J. to Mother. Mother then hired counsel and filed a petition for writ of habeas corpus to recover possession of A.J. In her petition, Mother alleged that she had a superior right of possession to A.J., that the TRO did not govern possession of A.J., and that the trial court lacked subject matter jurisdiction to make a child

3

custody determination because A.J.'s home state is New York. Mother also requested attorney's fees.

Father filed a response as well as a motion for drug screening and amended his petition to include requests for expanded temporary orders and another TRO that would attach the body of the child and prevent either parent from removing her from Tarrant County or contiguous counties. Father's supporting affidavit to his amended petition alleged that Mother abused marijuana, alcohol, and prescription drugs. The trial court ordered the clerk to issue the writ on September 30, 2015, directing "the person in possession of the child" to have her in court on October 5, 2015, at 9:30 a.m. "and to appear and show cause" why A.J. should not be returned to Mother.

On October 1, 2015, Mother filed a plea to the jurisdiction and an answer subject to her plea. She alleged in her plea that the trial court lacked subject matter jurisdiction because A.J. had lived in New York for six months prior to the commencement of the lawsuit. Attached to her plea was a petition for custody that was filed in New York on her behalf after Father initiated proceedings here.

On October 5, 2015, after the hearing and after conferencing with the New York judge, the trial court signed a preliminary order declining jurisdiction "save and except interim orders until such time that New York Family Courts issue orders" and ordering

- Father to have possession four hours that day;

4

- Mother to be accompanied by family on the return flight to New York while A.J. was in her possession, to not consume illegal drugs, and to follow doctor's orders regarding prescription drugs and alcohol consumption; and

- Father to pay $2,000 of Mother's attorney's fees, "reduced to judgment."

The trial court later signed a formal, typewritten order finding that it did not have jurisdiction of "this case and all the parties" but repeating the above listed interim orders regarding the parents, awarding Mother's lawyer a judgment of $2,000 for attorney's fees against Father, and ordering each party to bear his or her own costs.

## II. No Subject Matter Jurisdiction Under Section 152.201

Father contends in unnumbered issues that the trial court abused its discretion by granting Mother's plea to the jurisdiction. Whether a trial court has subject matter jurisdiction is a question of law that we review de novo.[2] In child custody cases involving competing jurisdiction, the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), found in Chapter 152 of the family code, governs.[3] Section 152.201(a) of the family code provides the "exclusive jurisdiction basis" for a Texas court to exercise jurisdiction over a child custody dispute.[4] Section 152.201 states,

---

[2]*Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

[3]*See* Tex. Fam. Code Ann. §§ 152.001–.317 (West 2014); *In re Dean*, 393 S.W.3d 741, 743 (Tex. 2012) (orig. proceeding).

[4]Tex. Fam. Code Ann. § 152.201(b); *Dean*, 393 S.W.3d at 746.

5

(a) Except as otherwise provided in Section 152.204, a court of this state has jurisdiction to make an initial child custody determination only if:

(1) this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(2) a court of another state does not have jurisdiction under Subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 152.207 or 152.208, and:

(A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(3) all courts having jurisdiction under Subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 152.207 or 152.208; or

(4) no court of any other state would have jurisdiction under the criteria specified in Subdivision (1), (2), or (3).

(b) Subsection (a) is the exclusive jurisdictional basis for making a child custody determination by a court of this state.

(c) Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination.[5]

There is no dispute that New York is and has been A.J.'s home state. Subsections (1) and (4) therefore do not apply. In many of Father's unnumbered

---

[5]Tex. Fam. Code Ann. § 152.201.

6

issues challenging the trial court's granting of Mother's plea to the jurisdiction, he attempts to fit this case within the confines of subsection (2). He contends that under section 152.208 of the family code, New York must decline home state jurisdiction in favor of the trial court because Mother committed "unjustifiable conduct."[6] But subsection (2) (and subsection (3)) of section 152.201 operate to give the trial court jurisdiction only if the home state declines jurisdiction "on the ground that a court of this state is the more appropriate forum" under Section 152.207 or 152.208.[7] New York has not declined to exercise jurisdiction on any ground.[8]

Further, Father misreads section 152.208. Section 152.208 applies when "a person seeking to invoke [the] jurisdiction" of a Texas court "has engaged in unjustifiable conduct" to ensure that the court has jurisdiction under the UCCJEA.[9] The section focuses on the conduct of the party "seeking to invoke"

---

[6] *See id.* § 152.208(a).

[7] *Id.* § 152.201(a)(2)–(3).

[8] *See In re Walker*, 428 S.W.3d 212, 220 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("Because Georgia did not decline to exercise jurisdiction on the ground that Texas is the more appropriate forum under Family Code section 152.207 or 152.208, the Texas trial court is without jurisdiction."); *Arnold v. Price*, 365 S.W.3d 455, 462 (Tex. App.—Fort Worth 2011, no pet.) (holding because home state had not declined to exercise jurisdiction, Texas could not exercise subject matter jurisdiction under subsection (2)); *see also Dean*, 393 S.W.3d at 750 (noting that New Mexico court had not declined jurisdiction under either section 152.207 or 152.208 but solely because Texas had decided to exercise jurisdiction, a reason the supreme court held the UCCJEA does not allow).

[9] Tex. Fam. Code Ann. § 152.208(a).

7

the Texas court's jurisdiction.[10]   Mother did not seek to invoke the jurisdiction of the Texas court; Father did.[11]   Additionally, section 152.208 discusses what a Texas court must or may do, not what another state's court must do.[12]   We overrule all of Father's issues regarding jurisdiction that are grounded in section 152.208.

Because New York did not decline jurisdiction, subsections (2) and (3) of section 152.201 do not operate to give the trial court jurisdiction, leaving the section 152.204 exception as the only avenue for the trial court to have obtained jurisdiction.[13]   Section 152.204 provides,

---

[10]*Id.*

[11]*See In re Busaleh*, No. 06-14-00073-CV, 2014 WL 4978642, at *2 (Tex. App.—Texarkana Oct. 7, 2014, no pet.) (mem. op.) (holding statute inapplicable because mother who had moved to Kentucky with children did not seek to invoke jurisdiction of Texas court); *Dickerson v. Doyle*, 170 S.W.3d 713, 720–21 (Tex. App.—El Paso 2005, no pet.) (holding statute inapplicable because mother who had moved to Alabama with child did not seek to invoke jurisdiction of Texas court; alleged father did).

[12]Tex. Fam. Code Ann. § 152.208; *see In re Marriage of Roman & Gonzalez*, No. 10-06-00023-CV, 2007 WL 1378493, at *4 (Tex. App.—Waco May 9, 2007, no pet.) (mem. op.) (holding section 152.208 does not allow a Texas court to assert jurisdiction until home state has declined it and that whether party committed unjustifiable conduct to give home state jurisdiction is a question for the home state court, not the Texas court).

[13]*See* Tex. Fam. Code Ann. § 152.201; *In re C.L.B.*, No. 10-13-00203-CV, 2014 WL 702798, at *5 (Tex. App.—Waco Feb. 20, 2014, no pet.) (mem. op.) ("'In short, if the child has a home state, if it is one other than Texas, and if the courts of that state have not declined to exercise their jurisdiction, then the courts of Texas lack jurisdiction over the child.'" (quoting *In re J.C.B.*, 209 S.W.3d 821, 823 (Tex. App.—Amarillo 2006, no pet.))).

8

(a) A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.

(b) If there is no previous child custody determination that is entitled to be enforced under this chapter and a child custody proceeding has not been commenced in a court of a state having jurisdiction under Sections 152.201 through 152.203, a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under Sections 152.201 through 152.203. If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under Sections 152.201 through 152.203, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child.

(c) If there is a previous child custody determination that is entitled to be enforced under this chapter, or a child custody proceeding has been commenced in a court of a state having jurisdiction under Sections 152.201 through 152.203, any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under Sections 152.201 through 152.203. The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires.

(d) A court of this state which has been asked to make a child custody determination under this section, upon being informed that a child custody proceeding has been commenced in or a child custody determination has been made by a court of a state having jurisdiction under Sections 152.201 through 152.203, shall immediately communicate with the other court. A court of this state which is exercising jurisdiction pursuant to Sections 152.201 through 152.203, upon being informed that a child custody proceeding has been commenced in or a child custody determination has been made by a court of another state under a statute similar to this section shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the

9

child, and determine a period for the duration of the temporary order.[14]

"The exercise of temporary emergency jurisdiction under section 152.204 is reserved for extraordinary circumstances."[15]

Father contends that the "trial court abused its discretion by failing to order that if no action was brought in New York, or if New York declines jurisdiction, then temporary emergency jurisdiction of Texas would develop into Texas exercising continuing jurisdiction." Before the trial court rendered a temporary order, Mother filed a petition in New York, and the New York court did not decline jurisdiction; thus, the trial court did not abuse its discretion by failing to state in its temporary order that if no action was brought in New York, or if New York declined jurisdiction, then temporary emergency jurisdiction of Texas would transform into continuing jurisdiction over A.J.[16] Texas is not A.J.'s home state; the trial court did not have subject matter jurisdiction. Instead, the trial court properly conferred with the New York court in which a custody petition was filed after the petition in this case and, exercising its temporary emergency jurisdiction, fashioned a suitably narrow order designed to protect the child without interfering with the jurisdiction of the home state court until the home

---

[14]Tex. Fam. Code Ann. § 152.204.

[15]*In re Salminen*, 492 S.W.3d 31, 40 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding).

[16]*See* Tex. Fam. Code Ann. § 152.204(b).

state court could act.[17]   We overrule all of Father's remaining jurisdictional arguments.

### III.  Attorney's Fees

In his remaining issues, Father complains that the trial court abused its discretion by awarding Mother attorney's fees and costs.  The trial court ordered that each party bear his or her own costs.  We overrule Father's complaints concerning costs.

As to attorney's fees, Father contends that the trial court abused its discretion by awarding Mother attorney's fees because he met his burden of establishing the necessity of the trial court's temporary emergency jurisdiction, based on her alleged "unjustifiable conduct" in obtaining out-of-state jurisdiction as well as her "other harmful behavior that was not in the best interest of the child."  Mother responds that the trial court could have declined to award fees against Father only if it had found that such an award was "clearly inappropriate," that Father's argument is circular and rests on a theory rejected by the trial court, and that there is no evidence that the award was not warranted.  Both parties rely on section 152.208 to support their arguments, but we have already held that the trial court did not have jurisdiction beyond the narrow, temporary emergency jurisdiction that it exercised under section 152.204 to render the limited interim order it issued to tide the parties over until the home state court rendered an

---

[17] *See id.* § 152.204(a), (c)–(d).

11

order. Consequently, the trial court did not have jurisdiction to decline under section 152.208.[18] We therefore review the order for an abuse of discretion.[19]

A trial court abuses its discretion if the court acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable.[20] An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances.[21] A trial court also abuses its discretion by ruling without supporting evidence.[22] But an abuse of discretion does not occur when the trial court bases its decision on conflicting evidence and some evidence of substantive and probative character supports its decision.[23]

Father did not challenge the reasonableness or necessity of the attorney's fees. The evidence shows that Mother had incurred $6,577 in attorney's fees and about $665 in legal expenses before the final hearing and that her trial

---

[18] *See id.* § 152.208.

[19] *See id.* §§ 106.002, 152.002 (West 2014); *In re B.A.B.*, 124 S.W.3d 417, 422 (Tex. App.—Dallas 2004, no pet.).

[20] *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

[21] *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low*, 221 S.W.3d at 620.

[22] *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012).

[23] *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (op. on reh'g).

counsel believed that the total amount earned through his testimony about attorney's fees was $7,500. Mother had paid her lawyer a $5,000 retainer.

Father's theory for at least "part of the emergency" was Mother's marijuana use. He testified that he smelled the "raw odor of marijuana" when he transferred the car seat from his truck to her car on September 21, 2015, after A.J. had been with him for a couple of days. He testified that he was worried that Mother would get pulled over and arrested with A.J. in the car and that the State would take the baby because his paternity had not been legally established. While Mother admitted that she smoked marijuana not only after her arrival in Texas but after Father filed his initial petition, the trial court heard no evidence of abandonment, no evidence of a direct threat of abuse or mistreatment, and no evidence that Mother smoked marijuana or was under its influence when caring for A.J.

But there was evidence that Mother's marijuana use since A.J.'s birth was not new information for Father. He testified about observing signs of Mother's marijuana use when he visited A.J. in the home state in both May and August 2015 and when Mother and A.J. visited Texas in June 2015. But he later testified that he did not suspect Mother in May 2015 of abusing marijuana. He admitted that he had never seen Mother smoke marijuana in front of the baby and had no knowledge of Mother abusing marijuana in front of A.J.

Father admitted that he had also smoked marijuana but testified that he last did so in April 2015, when A.J. was almost a year old and before he met her. He also admitted to withholding A.J. from Mother after he obtained the TRO and

13

had her served even though he admitted that he did not believe the order gave him the right to keep Mother from A.J.

Mother admitted that she moved to New York without telling Father because she did not want to be trapped in Texas without her family, whose support she needed to help her raise a newborn baby. But the trial court also heard evidence that Father was aware of Mother's pregnancy and the general due date but did not file legal proceedings to establish paternity before she left the state or afterward until he filed this petition, even though a DNA test had confirmed his paternity more than six months before the filing and he had visited A.J. twice in her home state of New York.

Mother testified that she had known that he was the father since the DNA test was completed in March or April 2015. Mother admitted that she knew "that the father was no one else by that time" but also testified that she did not know who the father was when the child was born in May 2014.

Finally, even though it had been more than six months since a DNA test confirmed his paternity, Father had paid no child support, by agreement at first because he told Mother he could afford to visit the child or support her but not both. He admitted that Mother had requested child support in September 2015 and that the maternal grandmother had "asked for assistance in [A.J.'s] care; things that they needed to help raise the child." He had "sent stuff that [he] was requested to send. And on numerous occasions, [he] had asked what she had needed, and they said they had everything handled." Specifically, Father

14

testified that he gave Mother $100 during her September 2015 trip and $60 during her June 2015 trip and had sent diapers and a car seat to New York when requested.

The trial court could have properly found that Mother's marijuana use here in Texas necessitated an emergency order for A.J.'s safety while at the same time concluding that Father should have filed in a New York court much earlier, should not have kept A.J. from Mother without a court order allowing him to do so, and should have been supporting his child. Accordingly, we hold that Father has not shown that the trial court abused its discretion by ordering him to pay $2,000 in attorney's fees to Mother's trial counsel. We overrule Father's remaining issues.

## IV. Conclusion

Having overruled Father's issues, we affirm the trial court's order granting Mother's plea to the jurisdiction.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, MEIER, and GABRIEL, JJ.

DELIVERED: December 1, 2016

15